**GENERAL BATTERY CORPORATION,**
**Plaintiff,**

v.

**GLOBE–UNION, INC., Defendant.**

**Civ. A. No. 76–83.**

United States District Court,
D. Delaware.

Oct. 5, 1982.

Paul E. Crawford, Connolly, Bove & Lodge, Wilmington, Del., for plaintiff; John H. Lewis, Jr., Raymond T. Cullen, William E. Zeiter, James J. Rodgers, and Mark P. Pazuhanich, Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel.

C. Waggaman Berl, Wilmington, Del., for defendant; Theodore W. Anderson, and J. Bradford Leaheey, Neuman, Williams, Anderson & Olson, Chicago, Ill., James P. Brody, Foley & Lardner, Milwaukee, Wis., of counsel.

## MEMORANDUM OPINION

MURRAY M. SCHWARTZ, District Judge.

A constitutional attack on Fed.R.Civ.P. 25(c) has resulted from a transfer of ownership of patents between parent corporation and wholly owned subsidiaries during the course of patent litigation. Defendant, Globe-Union Inc. ("Globe I"), on September 7, 1982 filed a motion under Fed.R.Civ.P. 25(c) to *change* the name of the original defendant to Johnson Controls, Inc. ("Johnson Controls") and to add a different defendant, Globe-Union Inc. ("Globe III"), as a party defendant and counterclaim plaintiff. Plaintiff, General Battery Corporation ("General"), responded on September 13 with two motions. One motion sought to amend the complaint pursuant to Fed.R. Civ.P. 15 to *add, inter alia,* Johnson Controls as a named defendant[1] while the other seeks dismissal of the entire action[2] and in the alternative a jury trial. In order to understand the Court's disposition of these motions made on the eve of trial,[3] it is necessary to briefly describe the events which gave rise to them.

Plaintiff, General, filed a declaratory judgment action against defendant, Globe I, on February 19, 1976 seeking a declaration that three of Globe I's patents were invalid, unenforceable and non-infringed.[4] Globe I answered and counterclaimed for infringement. While discovery was proceeding in an acrimonious fashion, changes, internal to defendant and at that time unknown to plaintiff, were being made with respect to ownership of the three patents in suit. These changes, not even hinted of record until January, 1982, are copied verbatim from Globe I's motion and accepted as true for purposes of General's motion to dismiss:

> October 10, 1978 Globe-Union Inc. (Globe I), a Delaware Corporation, and the original defendant herein was merged into Johnson Controls, Inc. and Johnson Controls, Inc. is the surviving corporation.

> October 10, 1978 Johnson Controls, Inc. transfers its entire right, title and interest in the patents in suit to Johnson-Globe, Inc., a wholly owned subsidiary.

> October 10, 1978 Johnson-Globe, Inc. changes its name to Globe-Union Inc. (hereinafter sometimes referred to as Globe II).

> September 30, 1980 Globe-Union Inc. (Globe II) transfers its entire right, title and interest in the patents in suit to Johnson Controls, Inc. and Globe-Union Inc. (Globe II) is dissolved.

> September 30, 1980 Johnson Controls, Inc. transfers its entire right, title and interest in G–U Delaware, Inc., G–U Delaware, Inc., was formed on Septem-

1. The Court granted this motion with the acquiescence of counsel for defendant on September 30, 1982.

2. At oral argument held on September 30, 1982, recently retained counsel for plaintiff confirmed he sought dismissal not only of defendant's counterclaim, but also the declaratory judgment aspect of this litigation initiated by General.

3. Trial in this ancient case is scheduled to commence on October 12, 1982.

4. The complaint as originally filed sought a declaratory judgment as to thirteen patents. Only three patents are presently at issue.

ber 26, 1980 and on September 30, 1980 changed its name to Globe-Union Inc. (Globe III), a Delaware Corporation.

March 3, 1982 Johnson Controls, Inc. transfers its entire right, title and interest on the patents in suit to Globe-Union Inc. (Globe III) nunc pro tunc and this assignment is recorded in the United States Patent and Trademark Office.

All of the above transfers were between corporate parent (Johnson Controls), a Wisconsin corporation, and wholly owned subsidiaries, Delaware corporations. Other than the October 10, 1978 merger of Globe I into Johnson Controls, all transfers of the patents in question were by assignment. The March 3, 1982 *nunc pro tunc* assignment executed by Johnson Controls, Globe I and Globe II[5] expressly provided for assignment to Globe III of "all claims for damages by reason of past infringement." (Doc. 374, Ex. F). Since plaintiff trained on the September 30, 1980 transfers, it will be considered the critical date for purposes of General's motion to dismiss.

General's motion to dismiss as a response to Globe I's Rule 25(c) motion mandates joint treatment of both motions. General mounts a straightforward constitutional attack on Rule 25(c) as sought to be applied. General correctly urges that no later than September 30, 1980, Globe I, long since merged into Johnson Controls, assigned all its right, title and interest in the patents in suit together with any claims for past infringement to Globe III.[6] As a consequence it is urged Globe I, the only named defendant and counterclaim plaintiff, had voluntarily but nonfraudulently stripped itself of all interest in the outcome of this litigation as of September 30, 1982. Absent a party with a litigable interest, General vigorously argues the Article III requisite case or controversy is and has been absent with consequent loss of jurisdiction. Defendant and counterclaim plaintiff having voluntarily

deprived this Court of jurisdiction, General argues a procedural rule, namely Fed.R. Civ.P. 25(c), cannot be employed substantively to restore jurisdiction. In support of its reasoning, General points to Fed.R.Civ.P. 82 which expressly commands that the Rules of Civil Procedure "shall not be construed to extend or limit the jurisdiction of the United States district courts. . . ." It concludes its argument by urging that since this Court had no subject matter jurisdiction as of September 30, 1980, grant of plaintiff's Rule 25(c) motion can be nothing other than use of procedural rules for an expressly prohibited substantive purpose—extension of jurisdiction of the federal court.

Before explaining the resolution of this close jurisdictional question, it is important to emphasize what is not involved. These motions do not involve prudential limitations on jurisdiction or limitations on the recovery of damages for infringement as established by federal substantive patent law. Nor does the question as presented involve competing forum choices of procedural law or any question as to federal or state substantive assignment law or state substantive corporation law. There is no question as to whether this Court had Article III subject matter jurisdiction when the complaint was filed by Globe I in February of 1976. It is conceded that such jurisdiction did exist. Nor is there involved the question of whether Globe I had the requisite personal stake and adversity in the controversy so as to initiate a fresh lawsuit after September 30, 1980—all agree it did not. Similarly, there is not involved the question of whether on this date Globe III could initiate a fresh lawsuit—all agree that it could.

Analysis starts with familiar fundamental propositions. Federal courts are courts of limited jurisdiction. The compass of federal judicial authority is delineated by Arti-

---

5. While Globe I and Globe II had previously been dissolved, the validity of the assignments is uncontested, presumably because the assignments coincide with both litigation positions and is treated as sanctioned by 8 *Del.C.* § 278.

6. The March 3, 1982 *nunc pro tunc* assignment is the first document to expressly mention a transfer of all claims for past infringement.

cle III, § 2 and, insofar as a district court is concerned, a conferral of subject matter jurisdiction by Congress. *Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxities De Guinea,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). The issue before the Court is whether on the facts of this case there exists a case or controversy sufficient to permit application of Rule 25(c).

Rule 25(c) has not been amended since the present Federal Rules of Civil Procedure went into effect in 1938. Nor has Rule 25(c) been the subject of substantial discussion either by the courts or commentators. The rule states that:

> In the case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

The rule does not state what factors should guide the court in determining whether to allow the original party to continue or to order the substitution or joinder of the transferee. Nor does the rule place any time limit on the parties to move for substitution or joinder after a transfer of interest pendente lite.

█ Rule 25(c) is designed to allow an action to continue unabated when an interest in a lawsuit changes hands. *Matter of Covington Grain Co., Inc.,* 638 F.2d 1362, 1364 (5th Cir.1981). The rule does not determine what actions shall survive a transfer of interest by a party, it deals only with the mechanics of substitution in an action which does survive under applicable substantive law. *Hilbrands v. Far East Trading Company, Inc.,* 509 F.2d 1321, 1323 (9th Cir.1975). 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 25.04[3] (2d ed. 1982).

For purposes of the instant motions, Globe I's counterclaim for patent infringement against General is treated as surviving by virtue of the assignment *nunc pro tunc* from Globe I, Globe II and Johnson Controls to Globe III. Globe III was as-

signed, in addition to all right, title and interest in the patents, the right to sue for prior infringements incurred by Globe I, Globe II and Johnson Controls. Globe I now seeks to add Globe III as a party to the litigation pursuant to Rule 25(c).

█ A plain reading of the rule indicates that such a motion would be appropriate in this action. Globe I, the original party, seeks to join Globe III, the person to whom Globe I's interest has been transferred. Courts have applied Rule 25(c) similarly to that which Globe I urges upon the Court. *See, Froning's, Inc. v. Johnston Feed Service, Inc.,* 568 F.2d 108, 110 (8th Cir.1978) (plaintiff corporation allowed to continue suit in its own name pursuant to Rule 25(c) after assignment pendente lite of claims against defendant); *Hilbrands v. Far East Trading Company, Inc.,* 509 F.2d at 1323 (joinder of insurer proper under Rule 25(c) where tort victim no longer had claim against defendant by reason of payment of workmen's compensation); *Hazeltine Corporation v. Kirkpatrick,* 165 F.2d 683, 685–86 (3d Cir.), *cert. denied,* 334 U.S. 819, 68 S.Ct. 1084, 92 L.Ed. 1749, *rehearing denied,* 334 U.S. 862, 68 S.Ct. 1527, 92 L.Ed. 1782 (1948) (Third Circuit expressly approved the use of Rule 25(c) where a defendant corporation transferred patents to its subsidiary pendente lite). However, in none of these cases did the court address the constitutional issue raised by General of whether the Court has jurisdiction to grant a Rule 25(c) motion where no case or controversy continues between the original parties. To the best of the Court's knowledge this issue has not been directly addressed by any court.

General contends that a federal court cannot use Rule 25(c) to revive a case or controversy once the named parties cease to have adverse interests. General states that even if jurisdiction is proper at the start of a case, a court does not have power to hear a case if jurisdiction ceases to be present during the pendency of the action. There is ample authority for General's claim regarding the limited jurisdiction of the Court. However, in none of the cases relied upon by General did the plaintiff's cause of ac-

tion survive as in this case and as is contemplated in Rule 25(c).

In *Singer Manufacturing Co. v. Wright,* 141 U.S. 696, 700, 12 S.Ct. 103, 104, 35 L.Ed. 906 (1891), the Court held that subject matter jurisdiction ceased to exist where the plaintiff, who only sought to enjoin state officials from collecting a tax, paid the tax. The Court concluded that, "The taxes being paid, the further prosecution of this suit to enjoin their collection would present only a moot question, upon which we have neither the right nor the intention to express an opinion." Similarly, in *Mills v. Green,* 159 U.S. 651, 657–58, 16 S.Ct. 132, 134, 40 L.Ed. 293 (1895), the Court held that it could not order that a person be allowed to vote in an election that had already properly occurred while the case was on appeal. Again as in *Singer,* since the Court could not grant the relief requested by the plaintiff, the issues were rendered moot.

General also relies upon *South Spring Gold Co. v. Amador Gold Co.,* 145 U.S. 300, 302, 12 S.Ct. 921, 36 L.Ed. 712 (1892), where the Court held that a case or controversy ceased to exist where plaintiff and defendant corporations merged. Although a minority of plaintiff's stockholders still had an interest in the litigation, the Court ordered that they could not be substituted for the plaintiff corporation. *South Spring* is inapposite in that the minority shareholders apparently did not have the right to assert the corporation's claim. The shareholders may have had an interest in the litigation but they were not the transferees of the corporation or the assignees of the corporation's claim.

The question of whether Rule 25(c), as applied in this case, will expand the jurisdiction of this Court in contravention of Rule 82 or the Constitution is one of first impression. The rule falls into what has been described in the context of an *Erie* problem as "a twilight zone ... where rational classification" as a procedural or jurisdictional rule "could be made either way, and where Congress directly or the Supreme Court under the authority of the [Enabling Act] would have the power to

prescribe a so-called rule of procedure for the federal courts." *Sampson v. Channell,* 110 F.2d 754, 756–57 (1st Cir.), *cert. denied,* 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415 (1940), as quoted in *Iovino v. Waterson,* 274 F.2d 41, 48 (2d Cir.1959), *cert. denied sub nom., Carlin v. Iovino,* 362 U.S. 949, 80 S.Ct. 860, 4 L.Ed.2d 867 (1960). Although the argument can be made that once Globe I ceased to have an interest in the litigation this Court lost subject matter jurisdiction, the better characterization is that subject matter jurisdiction remained and only ownership of the chose in action was transferred.

Rule 25(c), as applied in this case, is a valid procedural rule that is necessary for the efficient functioning of the federal courts. The rule enables a court to continue an action unabated upon a transfer of interest after an action has commenced. General argues that once a party's entire interest, including the right to sue, is transferred the court is divested of jurisdiction and is powerless to act further. The general principle urged by General goes too far and would be applicable notwithstanding General's protestations that adoption of its position should be limited to the case *sub judice.* If a court lost jurisdiction upon the absence of a proper plaintiff where the action survives under substantive law, then in an action where a party dies the court would also lose jurisdiction. Once the party died, there would no longer be adverse parties presenting a case or controversy to the court. Those who under state law would be entitled to continue the deceased party's action would be forced to initiate a new action. In order to prevent this needless repetition of effort and expense, Rule 25(a)(1) was created to enable an action to continue in federal court where the party dies but the action survives.

Similarly, Rule 25(c) permits the court to continue to hear a case where the action survives but the original party has transferred interest in the litigation to another. Rather than require the assignee to initiate a new action, the rule enables the court to

continue the action with the assignee joined with or in the place of the original party.

The present action was commenced in 1976. If Globe III cannot be joined to this action pursuant to Rule 25(c), the efforts of the Court and the parties up until this time will be for naught. A party could elude the proper jurisdiction of a federal district court by transferring its interest during the course of the litigation. A plaintiff would be out of court if a defendant corporation merely transferred its interest to a subsidiary. Similarly, a plaintiff, possibly to avoid litigation in a counterclaim, should not be able to take advantage of a defendant's transfer of interest to a subsidiary and claim that the court no longer has jurisdiction to proceed. A spate of litigation to test a litigant's motive in transferring its interest is not a welcome alternative.

Rule 25(c), as applied in this case, allows for the efficient operation of the federal courts in the event of a transfer of interest. The joinder of Globe III as a party will place the real party in interest before the Court.[7] Globe III will not be asserting new claims against General. As assignee, Globe III is placed in the identical position of Globe I. The allegations in the counterclaim and the relief sought are identical. General will not be prejudiced in any way by the joinder of Globe III to this proceeding.

The joinder of Globe III under Rule 25(c) will not violate the constitutional prohibitions that underlie the requirement of a case or controversy. "Art. III justiciability is not a legal concept with a fixed content or susceptible of scientific verification.... The imperatives of a dispute capable of judicial resolution are sharply presented issues in a concrete factual setting and self-interested parties vigorously advocating opposing positions." *United States Parole Commission v. Geraghty,* 445 U.S. 388, 401, 403, 100 S.Ct. 1202, 1211, 1212, 63 L.Ed.2d 479 (1980). These imperatives are met in this case. Globe I's claim against General still exists. The issue is not moot. The Court can grant relief on the claims of validity, enforceability and infringement regarding the patents that form the subject matter of this litigation. Globe III is continuing to prosecute Globe I's claim against General. As assignee of those claims, Globe III is the proper party to proceed against General. This is not because Globe III's interests are similar to those of Globe I's but because Globe III's claim is Globe I's claim. Therefore, Globe I's motion to change the name of the original defendant to Johnson Controls, Inc. and to join Globe-Union, Inc. (Globe III) as a party is granted. General's motion to dismiss is denied.

In response to the substitution of Johnson Controls and the joinder of Globe III, General has demanded a jury trial as to all issues asserted in defendant's counterclaim for patent infringement. General argues that Rule 25(c) cannot be used by Globe III to circumvent General's right to a jury trial pursuant to Fed.R.Civ.P. 38(b) and the Seventh Amendment of the United States Constitution.

> Rule 38(b) states in relevant part that:
> Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue.

General contends that the addition of Globe III as a defendant is in effect the initiation of a new lawsuit by Globe III against General for patent infringements starting, at the latest, after the assignment to Globe III on September 30, 1980. The waiver made in 1977 of the right to a jury trial on infringement claims asserted by Globe I cannot now, it is asserted, be deemed a waiver of that right with respect to alleged

---

7. At this time, the Court is uncertain whether Globe III should be substituted for Globe I which is now Johnson Controls as a result of a merger or joined with Globe I. Globe I has asserted that Johnson Controls retains an interest in this litigation. The Court has difficulty ascertaining what that interest is, but will allow Globe I through Johnson Controls to remain in the litigation at this point.

infringements occurring after Globe I ceased to own the patents.

As set forth above, the joinder of Globe III as an additional party is not equivalent to the commencement of a new action. Globe III is not initiating a new action but continuing to prosecute Globe I's counterclaim against General for ongoing patent infringement. Globe III occupies the same relative position in the continued action as Globe I. The claim of Globe III is not new, it is the identical claim of Globe I. *See,* 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 25.02 (2d ed. 1982). The joinder of Globe III under Rule 25(c) does not revive General's right to a jury trial.

Moreover, defendant's amended counterclaim (Doc. 385) has not changed any of the claims asserted against General in the original counterclaim. (Doc. 23). A jury trial may only be demanded for new issues raised by amended pleadings. An amendment does not revive a right, previously waived, to demand a jury trial on issues already framed by the original pleadings. *Walton v. Eaton Corporation,* 563 F.2d 66, 71–72 (3d Cir.1977); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2320 at 95–96 (1971 & Supp.1981). General's demand for a jury trial is improper and will be denied.

Finally, General requests that the Court exercise its discretion to direct a jury trial on all issues pursuant to Fed.R.Civ.P. 39(b). General asserts that a jury trial is particularly appropriate in this case. Although a jury trial can be demanded in a patent case, *Tights, Inc. v. Stanley,* 441 F.2d 336, 342–344 (4th Cir.), *cert. denied,* 404 U.S. 852, 92 S.Ct. 90, 30 L.Ed.2d 91 (1971), the Court believes that this particular case is not suitable for a jury trial. The case is due to commence in one week. The Court's trial calendar is crowded. The parties agreed to the present trial date on the stipulation that each side present their case in five days. A jury trial will most likely take significantly longer than ten days. Finally, a mere glance at the Proposed Pre-Trial Order (Doc. 373) conclusively establishes that this case is not well suited for determination by a jury. Therefore, the Court will not exercise its discretion to order a jury trial.

An appropriate order will be issued.