NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PERSONALIZED MEDIA COMMUNICATIONS, L.L.C.,**

*Plaintiff/Counterclaim Defendant-*

*Appellee,*

**v.**

**SCIENTIFIC-ATLANTA, INC. AND POWERTV, INC.,**

*Defendants,*

**v.**

**TVG-PMC, INC., STARSIGHT TELECAST, INC., AND GEMSTAR-TV GUIDE INTERNATIONAL, INC.,**

*Counterclaimants-Appellants.*

---

2011-1466

---

Appeal from the United States District Court for the Northern District of Georgia in Case No. 02-CV-0824, Judge Charles A. Pannell, Jr.

---

Decided: August 23, 2012

---

ARUN S. SUBRAMANIAN, Susman Godfrey LLP, of New York, New York, argued for plaintiff/counterclaim defen-

dant-appellee.  With him on the brief were NATHAN M. REHN, and STEPHEN D. SUSMAN.

    DARYL L. JOSEFFER, King & Spalding, of Washington, DC, argued for counterclaimant-appellant.  With him on the brief were ADAM M. CONRAD, of Charlotte, North Carolina, and JOSEPH C. SHARP, Ashe, Rafuse, & Hill, LLP, of Atlanta, Georgia.

_____

    Before RADER, *Chief Judge*, MAYER and DYK, *Circuit Judges*.

    Opinion for the court filed by *Chief Judge* RADER.  Concurring opinion filed by *Circuit Judge* MAYER.

RADER, *Chief Judge*.

    This appeal comes from a patent infringement suit between Personalized Media Communications, LLC ("PMC") and several defendants in the Northern District of Georgia ("the Georgia litigation").  Appellants ("Gemstar") were third-party counterclaimants in the Georgia litigation.  Gemstar claimed the Georgia litigation breached a license agreement between PMC and Gemstar granting Gemstar the exclusive right to litigate infringement of the patents-in-suit.  Gemstar also requested a declaratory judgment on the scope of the licensing agreement.

    The district court dismissed Gemstar's declaratory judgment claim as moot.  It then found it had original, federal question patent jurisdiction over Gemstar's breach of contract claim.  It concluded PMC did not breach the agreement because Gemstar could not show damages.  Gemstar appealed.

    This court reverses the decision on original jurisdiction over the contract claim and agrees that the district court could properly decline to exercise supplemental

jurisdiction over that claim. Because the parties are now engaged in new litigation over the issues raised in the declaratory judgment action, this court affirms the dismissal of that claim.

I.

PMC is the assignee of a group of United States patents called "the Harvey Patents." The Harvey Patents disclose and claim numerous inventions relating to the distribution and control of media and programming content. Gemstar's business consists primarily of providing interactive programming guide ("IPG") technology to television set-top box manufacturers. These interactive programming guides allow television viewers to locate and view programming and may provide other features such as parental controls, pay-per-view, and browse functionalities.

In 2000, Gemstar and PMC signed a license agreement granting Gemstar "the exclusive right, but not the obligation to enforce" the Harvey Patents "against any Person operating in the [IPG] Field." J.A. 2590. The license remains in effect.

On March 2, 2002, PMC sued Scientific-Atlanta for infringement of the Harvey Patents resulting from the "unauthorized manufacture, use, sale, offer to sell and/or importation . . . of products, services and/or systems that fall within the scope of [PMC's] patented automated broadcast control technology, and [PMC's] patented single processing apparatuses and methods." J.A. 1291. In describing the Harvey Patents, PMC's complaint represented that the Harvey Patents involved "technologies that are used to automate the receipt, storage, scheduling and rebroadcast of various forms of television programming." J.A. 1297. In response, Scientific-Atlanta filed counterclaims against Gemstar on the grounds that

Gemstar holds "perpetual and exclusive licenses in the PMC patents in suit and the disposition of [PMC's suit] may impede [Gemstar's] ability to protect that interest while leaving the [Scientific-Atlanta] subject to a substantial risk of incurring double, multiple, or other inconsistent obligations." J.A. 1435.

In February 2003, Gemstar filed cross-claims against PMC for breach of contract and declaratory judgment of its rights under the license and the Harvey Patents. For the declaratory judgment, Gemstar stated that based on the suit between PMC and Scientific-Atlanta, it appears "PMC claims that it has retained the exclusive right to bring suit for infringement of the Harvey Patents" but that "PMC's assertion of rights in the Harvey Patents . . . falls (at least in part) within Gemstar's exclusive rights under the Harvey Patents." J.A. 1372–73. Gemstar alleged a substantial dispute between PMC and itself regarding, *inter alia*, "the extent of the parties' respective rights under the Harvey Patents." J.A. 1373. Gemstar specifically sought a declaration of the respective rights of PMC and Gemstar with respect to the Harvey Patents. *Id.* Gemstar also requested injunctive relief to prevent PMC from prosecuting its current action against Scientific-Atlanta and from "further interfering with Gemstar's right to enforce and/or defend the Harvey Patents. . . ." J.A. 1374; 1391.

With respect to the breach of contract claims, Gemstar sought "damages arising naturally from or reasonably foreseeable as a result of PMC's breach includ[ing], but not necessarily limited to, all the expenses and costs that Gemstar has incurred as a result of PMC's wrongfully asserting against Scientific-Atlanta . . . claims for patent infringement . . . ." J.A. 1446. While Gemstar also filed counterclaims against Scientific-Atlanta for infringement of the Harvey Patents, Gemstar and Scien-

tific-Atlanta settled all claims against one another in June 2005.

Following a three-year stay of the Georgia litigation for patent reexamination proceedings before the United States Patent and Trademark Office, the trial court held a three-day bench trial on Gemstar's claims against PMC. Following the bench trial, PMC moved to dismiss Gemstar's declaratory judgment claim as moot because of Gemstar's settlement with Scientific-Atlanta. In December 2010, the trial court granted PMC's motion. The trial court also declined to exercise supplemental jurisdiction over Gemstar's remaining claims and found that Gemstar was no longer an appropriate party to the case.

Gemstar moved for reconsideration of its dismissal. The trial court refused to reconsider Gemstar's declaratory judgment and injunctive relief claims. However, with respect to its jurisdiction over Gemstar's breach of contract counterclaims, it concluded that it had original, federal question jurisdiction under *U.S. Valves, Inc. v. Dray*, 212 F.3d 1368 (Fed. Cir. 2000). The trial court rejected the merits of Gemstar's breach of contract claims because Gemstar had not shown the necessary element of damages. The trial court entered a final judgment, and Gemstar made a timely appeal to this court. This court has jurisdiction under 28 U.S.C. § 1295.

Following Gemstar's appeal, Gemstar was joined to another patent infringement suit between PMC and several other parties ("the Texas litigation"). According to the trial court in the Texas litigation, Gemstar is a necessary party because the litigation involves the scope of Gemstar's license with PMC and Gemstar needs to protect its interest in the license. *Personalized Media Commc'ns, LLC v. Echostar Corp.*, No. 2:08-CV-70-RSP (E.D. Tex., July 10, 2012).

## II.

This court reviews a district court's determination as to original patent law jurisdiction without deference. *HIF Bio, Inc. v. Yung Shin Pharm. Indus.*, 600 F.3d 1347, 1352 (Fed. Cir. 2010). While the court reviews a district court's determination as to mootness without deference, *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1268 (11th Cir. 2006), the district court's ultimate conclusion to deny declaratory judgment jurisdiction and whether to exercise supplemental jurisdiction contains an element of discretion, *Green v. Mansour*, 474 U.S. 64, 71 (1985) ("[T]he declaratory judgment statute is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (stating a district court's decision of whether to exercise supplemental jurisdiction is "purely discretionary").

## III.

28 U.S.C. § 1338 gives district courts original jurisdiction over "any civil action arising under any Act of Congress relating to patents." There is no original jurisdiction unless the "right to relief necessarily depends on resolution of a substantial question of federal patent law." *Christianson v. Colt Indus. Operation Corp.*, 486 U.S. 800, 814–15 (1988). *See, e.g., U.S. Valves, Inc.*, 212 F.3d at 1372 (finding jurisdiction over breach of contract claim because whether the asserted patents covered the licensor's products was an element of proving breach); *HIF Bio, Inc. v. Yung Shin Pharm. Indus.*, 600 F.3d 1347, 1352 (Fed. Cir. 2010) (finding jurisdiction over slander of title claim because plaintiffs' allegation that defendants' public statements of inventorship are false requires a determination of true inventorship); *Bd. of Regents, Univ. of Tex. v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358, 1363–

64 (Fed. Cir. 2005) (noting that not all breach of contract actions involving patents are claims arising under federal patent law).

Here, the district court erroneously determined it had original patent jurisdiction over Gemstar's breach of contract claim. Gemstar's claim did not involve inventorship, infringement, validity, or enforceability of the Harvey Patents. Gemstar has not accused PMC of any direct or indirect infringement of the Harvey Patents. The sole issue is the scope of the IPG field, as defined by the licensing agreement between Gemstar and PMC, over which Gemstar was given the exclusive right to assert the Harvey Patents in suits against third parties. That scope does not depend on patent claim scope. Thus, the district court erred in finding original patent law jurisdiction.

Because the district court erred in finding it had original patent law jurisdiction, this court vacates the district court's decision on the merits of the breach of contract claim. As discussed below we also agree that the district court could properly decline to exercise supplemental jurisdiction over that claim.

## IV.

In 2010, the Georgia district court dismissed Gemstar's declaratory judgment claim as moot and declined to exercise supplemental jurisdiction over the contract claims. Declaratory judgment and supplemental jurisdiction determinations have a discretionary element. *See Carlsbad Tech., Inc.*, 556 U.S. at 639; *Green*, 474 U.S. at 71. Regardless of any error that might have been committed by the district court, discretion now counsels against exercising jurisdiction over Gemstar's claims.

Under the supplemental jurisdiction statute, a district court "may decline to exercise supplemental jurisdiction"

if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  All such original jurisdiction claims will now have been dismissed. Nonetheless, Gemstar argues that it would be an abuse of discretion to decline to exercise supplemental jurisdiction because substantial resources have been invested in this case.  While we agree that a district court should consider judicial economy when deciding whether to exercise supplemental jurisdiction, other factors weigh in favor of dismissal in this case.[1]

On July 10, 2012, the Eastern District of Texas ordered that Gemstar be joined to the Texas litigation.  The Texas court reasoned "the scope and meaning of the license agreement between Personalized Media and Gemstar will be at issue," and a ruling in the case "may as a practical matter impair Gemstar's ability to protect its interest in the future sublicensing of the asserted patents." *Personalized Media Commc'ns, LLC*, slip op. at 6.

Gemstar is currently pursuing its claims against PMC in the context of the Texas litigation.  The Texas litigation

---

[1]    We note that under the supplemental jurisdiction statute, the statute of limitations has not yet run on Gemstar's breach of contract claim.  *See* 28 U.S.C. § 1367 ("The period of limitations for any claim asserted [based on supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."); *Myers v. Cnty. of Lake, Ind.*, 30 F.3d 847, 848–49 (7th Cir. 1994) ("Section 1367(d), giving the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction, removes the principal reason for retaining a case in federal court when the federal claim belatedly disappears.").  Thus, Gemstar remains free to re-file its contract claim in an appropriate venue.

will achieve the same result Gemstar sought in the long-dead Georgia litigation: a decision on the scope and meaning of the license agreement between PMC and Gemstar, and, if appropriate, damages for breach of contract. Additionally, Gemstar did not choose Georgia as the forum for its declaratory judgment case because it was a third party brought into the Georgia litigation. Thus, allowing Gemstar to proceed with its case in Texas does not impair a plaintiff's choice of forum. *Cf. Voda v. Cordis Corp.*, 476 F.3d 887, 904 (Fed. Cir. 2007) (noting that the plaintiff's choice of forum is a factor in considering the exercise of supplemental jurisdiction).

The Texas litigation is not simply an infringement litigation between PMC and Gemstar but involves the assertion of independent claims not involved in the Georgia action, and staying the Texas action would therefore be problematic. This is not a situation in which the Georgia and Texas cases can comfortably proceed at the same time. Allowing both claims to go forward would create duplicate litigation on the same legal issues – one in Texas, one in Georgia. This potentially would expose Gemstar and PMC to inconsistent interpretations of their license agreement and impair their ability to enforcement the agreement. Such duplicate litigation would also defeat judicial economy as it would task two courts with deciding the same issue.

Simply put, any error in the trial court's decision to dismiss Gemstar's declaratory judgment action is harmless because circumstances have outpaced this litigation. *Palmer v. Hoffman,* 318 U.S. 109, 116 (1943) (noting that setting aside a judgment because of an erroneous ruling requires a showing of prejudice).

## V.

The district court erred in finding original patent jurisdiction over Gemstar's contract claims but did not err in declining to exercise supplemental jurisdiction. As such, this court reverses the finding of jurisdiction and vacates the district court's decision on the merits of Gemstar's contract claims. This court affirms the district court's dismissal of Gemstar's declaratory judgment claim because any error in its decision is rendered harmless by Gemstar's participation in the Texas litigation.

**AFFIRMED-IN-PART AND REVERSED-AND-VACATED-IN-PART**

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PERSONALIZED MEDIA COMMUNICATIONS, L.L.C.,**
*Plaintiff/Counterclaim Defendant-Appellee,*

v.

**SCIENTIFIC-ATLANTA, INC. AND POWERTV, INC.,**
*Defendants,*

v.

**TVG-PMC, INC., STARSIGHT TELECAST, INC., AND GEMSTAR-TV GUIDE INTERNATIONAL, INC.,**
*Counterclaimants-Appellants.*

---

2011-1466

---

Appeal from the United States District Court for the Northern District of Georgia in case no. 02-CV-0824, Judge Charles A. Pannell, Jr.

---

MAYER, *Circuit Judge*, concurring.

I agree that the district court had no original federal question jurisdiction over the breach of contract claim brought by Gemstar-TV Guide International, Inc. ("Gemstar") against Personalized Media Communications, L.L.C. ("PMC"). I further agree that because the scope of

the licensing agreement between Gemstar and PMC will be adjudicated in other proceedings, *see Personalized Media Commc'ns, L.L.C. v. Echostar Corp.*, No. 2:08-CV-70-RSP, slip op. at 6 (E.D. Tex. July 10, 2012), exercising jurisdiction over Gemstar's declaratory judgment claim would "defeat judicial economy as it would task two courts with deciding the same issue," *ante* at 8.

I do not, however, subscribe to the majority's intimation of error in the trial court's original decision to dismiss Gemstar's declaratory judgment claim as moot. The subject matter of the litigation before the district court was whether Scientific-Atlanta, Inc. ("Scientific") infringed U.S. Patent Nos. 4,694,490, 4,704,725, 4,965,825, 5,109,414, 5,233,654, 5,335,277, and 5,887,243 (collectively "the Harvey patents"). All issues related to the alleged infringement were rendered moot when Scientific entered into settlement and licensing agreements with both Gemstar and PMC. Because Gemstar entered into a comprehensive settlement agreement with Scientific related to its rights under the Harvey patents, it had no continuing interest in the case and the trial court correctly dismissed its declaratory judgment claim. *See Socialist Lab. Party v. Gilligan*, 406 U.S. 583, 586 (1972) ("It is axiomatic that the federal courts do not decide abstract questions posed by parties who lack a personal stake in the outcome of the controversy." (citations and internal quotation marks omitted)); *Gould v. Control Laser Corp.*, 866 F.2d 1391, 1392 (Fed. Cir. 1989) ("Settlement moots an action.").

Gemstar's effort to obtain a "declaration of its rights" in the Harvey patents is a poorly-disguised attempt to obtain an advisory opinion on the scope of its licensing agreement with PMC. Gemstar has settled its dispute with Scientific, and any dispute Gemstar has with PMC over the scope of their licensing agreement is too remote

and speculative to support the exercise of declaratory judgment jurisdiction. A patent licensee is not entitled to turn to the federal courts for an adjudication of its rights under a license agreement until such time as there is an actual and concrete dispute over the scope of those rights. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (declaratory judgment jurisdiction is available only where the dispute is "definite and concrete" (citations and internal quotation marks omitted)). Gemstar's vague allegation that its hypothetical relationships with un-named "prospective licensees" might be damaged because of uncertainties over the scope of its licensing agreement with PMC, is not the type of "specific live grievance," *Golden v. Zwickler*, 394 U.S. 103, 110 (1969), necessary to support the exercise of declaratory judgment jurisdiction. *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1349 (Fed. Cir. 2007) (concluding that there was "no evidence of a justiciable controversy" where a declaratory judgment plaintiff's potential future expansion plans were "vaguely defined"); *Microchip Tech. Inc. v. Chamberlain Group, Inc.,* 441 F.3d 936, 943 (Fed. Cir. 2006) ("Without an underlying legal cause of action, any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction."). Instead, as the trial court correctly concluded, because "Gemstar no longer ha[d] any stake in the patent dispute between PMC and [Scientific] . . . any ruling on Gemstar's declaratory judgment claim would constitute an advisory opinion as to the rights that PMC and Gemstar have in the Harvey patents with respect to a hypothetical party." *Personalized Media Commc'ns, L.L.C. v. Scientific-Atlanta, Inc.*, No. 1:02-CV-824-CAP, slip. op. at 4 (N.D. Ga. Dec. 14, 2010).